Charles A. Lyons (No. 17583)
Kyle O. Maynard (No. 16640)
Assistant Attorneys General
Sean D. Reyes (No. 7969)
Utah Attorney General
1594 West North Temple, Suite 200
Salt Lake City, UT 84116
Telephone: (801) 538-7227
Facsimile: (801) 538-7440
calyons@agutah.gov
kylemaynard@agutah.gov
*Attorneys for Utah Division of Wildlife Resources*

Renee Spooner (No. 6993)
Paul McConkie (No. 5881)
Assistant Attorneys General
Sean D. Reyes (No. 7969)
Utah Attorney General
160 East 300 South, 5th Floor
P.O. Box 140857
Salt Lake City, Utah 84114-0857
Telephone (801) 366-0353
rspoooner@agutah.gov
pmcconkie@agutah.gov
*Attorneys for Utah Department of Transportation*

---

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| THE STATE OF UTAH through UTAH DEPARTMENT OF NATURAL RESOURCES – DIVISION OF WILDLIFE RESOURCES, an agency of the State of Utah, and UTAH DEPARTMENT OF TRANSPORTATION, an agency of the State of Utah,<br><br>     *Plaintiffs,*<br>v.<br><br>ANDREA OVESON, TRUSTEE OF SHCH ALASKAS TRUST dated January 2, 2014, JANA GUNDERSON, TRUSTEE OF ROCKY MOUNTAIN HOLDING TRUST dated January 5, 1993, & JOHN DOES 1 – 10,<br>     *Defendants.* | **AMENDED COMPLAINT**<br>(Corrected)<br><br><br>Case No. 2:23-cv-00789 DBP<br><br>Magistrate Judge Dustin B. Pead |

Plaintiffs Utah Department of Natural Resources – Utah Division of Natural Resources

("UDWR") and Utah Department of Transportation (*"UDOT"*) (collectively the Plaintiffs), by

and through counsel complain and allege against the Defendants for the following: 1) declaratory relief; 2) easement deed reformation, and 3) quiet title, or in the alternative, prescriptive easement for the railroad uses that occurred for over 20 years, and for a portion of the railroad right-of-way that was dedicated as a highway through continuous use as a public throughfare for a period of 10 years.

## JURISDICTION & VENUE

1.     UDOT's action for quiet title concerns real property with a railroad right-of-way located in Provo Canyon, Wasatch County, Utah.

2.     UDWR's action for declaratory relief and deed reformation concerns real property involving a fishing easement located in Wasatch County, Utah.

3.     Defendants removed this case.  Pursuant to 28 U.S.C. §1331, the district court has jurisdiction of civil actions arising under the laws of the United States.  This Court has subject matter jurisdiction because of the federal question concerning the transfer of the railroad right-of-way from Denver and Rio Grande Western Railroad Company to the State Road Commission pursuant to 43 U.S.C. §912.  Plaintiffs also have claims based upon state law.  UDWR's claims are unrelated to UDOT's railroad right-of-way, other than the fishing easement being adjacent to UDOT's railroad right-of-way. State court has subject matter jurisdiction over the claims under Utah Code §§78A-5-102(1) and 78B-6-401.

4.     Venue is proper because the properties or property interests are located in Wasatch County, Utah.

## PARTIES

5.      Plaintiff, UDOT, is an agency of the State of Utah created under Utah Code §72-1-201.

6.      Pursuant to Utah Code §72-1-201(1)(d), UDOT is required to plan, develop, construct, and maintain state transportation systems that are safe, reliable, and serve the needs of the traveling public, commerce, and industry.

7.      UDOT owns a railroad right-of-way located in portions of Lots 4 and 5, in the portion of the west half of the Southeast Quarter of Section 13, Township 5 South, Range 3 East, Salt Lake Base and Meridian, lying between the centerline of US-189 and the centerline of Provo River.

8.      Plaintiff, UDWR, is a Utah state agency with offices and operations throughout the State of Utah statutorily mandated to improve access for fishing and hunting and to provide perpetual access for hunting, fishing, or trapping under Utah Code Ann. §§ 23A-3-207 and -306.

9.      Defendant Andrea Oveson, Trustee of the SHCH Alaska Trust dated January 2, 2014, claims ownership of real property to those portions of Lots 4 and 5, in the portion of the west half of the Southeast Quarter of Section 13, Township 5 South, Range 3 East, Salt Lake Base and Meridian, where the railroad right-of-way is located and is a private property owner that owns real property encumbered by a fishing easement in Wasatch County, Utah.

10.      Defendant, Jana Gunderson, Trustee of the Rocky Mountain Holding Trust dated January 5, 1993, is a property owner that owns real property encumbered by the fishing easement generally located within Lots 3, 4, and 5 of the west half of the Southeast Quarter of Section 13, Township 5 South, Range 3 East, Salt Lake Base and Meridian in Wasatch County, Utah.

11.     Defendants John Does 1 – 5 are unknown persons or entities who may claim an interest in the railroad right-of-way or underlying fee property who have not been identified at the time of the filing of this Complaint.  Pursuant to Rule 9(b) of the Utah Rules of Civil Procedure, the Plaintiffs reserve the right to amend their Complaint to add the true identities of the Defendant Does as they may appear through discovery.

## UDWR'S ALLEGATIONS AND CLAIMS FOR RELIEF

### *The Fishing Easement*

12.     In 1993 PacifiCorp, d/b/a Utah Power & Light Company, granted UDWR a fishing easement, generally located at Sec. 13, T5S, R3E SLB&M (the "Fishing Easement") (*See* Attachment A).

13.     The Fishing Easement which was recorded by the Wasatch County Recorder at 10:35 a.m. on August 17, 1993.

14.     The Fishing Easement states the following: "Said easement is for the following purposes and is subject to the following restrictions and conditions:

i. Said easement is granted for public access for the sole purpose of fishing, and it is understood that grantee may grant access for that purpose only. Except as otherwise provided herein, Grantee shall prohibit any public use not qualifying as a "recreational purpose" under the limitations of landowner act liability at Utah Code Ann. Section 57-14-1, et seq.;

ii. DWR personnel may use the above-described easement for purposes of fishery management, fishery creel census, and enforcement of wildlife laws and regulations;

iii. DWR personnel may use the above-described easement for purposes of ingress and egress for the purpose of repairing and stabilizing stream banks

4

and stream beds, planting vegetation for erosion control and fish habitat, including the right to use necessary equipment which does not reasonably interfere with the natural or existing character of the easement or surrounding lands. Said right of ingress and egress passes to persons and/or contractors employed by DWR; and

    iv.   DWR is given the right to use the above-described easement for purposes of constructing a fence along the boundary of said easement for the purpose of excluding livestock."

15.     The intent of the Fishing Easement is articulated clearly in the recorded document; however, the metes and bounds legal description in the Fishing Easement document is inconsistent with the associated map filed with the Fishing Easement and with the legal description of the shared border of the adjacent Heber Creeper Railroad Right of Way, which is owned by the UDOT and intended to be the Fishing Easement's western boundary.

16.     As a result, when plotted on a map, the described easement corridor does not match the border of UDOT's railroad right-of-way.

17.     Instead, the described easement begins approximately 100' to the southeast of the Provo River and roughly parallels the course of the river to the northeast until it reaches the edge of the section line in the northeast corner.

18.     However, the location for UDOT's railroad right-of-way is consistent with the location description contained in UDOT's deed and has historically been accurately depicted on surveys.

19.     The Fishing Easement's legal description contains a point of beginning on the East line of the railroad right-of-way and contains identical bearings and calls as the railroad right-of-way with two exceptions believed to be typographical errors.

20.     One additional ambiguity exists in the fishing easement's described distance of a point shared with the eastern edge of the railroad right-of-way (the same point on the western edge of the fishing easement) with the corner of Section 13.

21.     Reconciliation of the discrepancies between the current legal description and the intended boundaries of the fishing easement must be corrected by adjusting the tie from the corner of Section 13 and correcting the identified typographical errors to be consistent with the description contained in the railroad right-of-way.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

22.     UDWR hereby incorporates by reference all above paragraphs of this Complaint as if fully set forth herein.

23.     This Court has the power to issue declaratory judgments determining rights, status, and other legal relations within its respective jurisdiction under Utah Code Ann. § 78B-6-401.

24.     A claimant must demonstrate the following four elements to establish an entitlement to declaratory relief: "(1) a justiciable controversy presented for resolution; (2) the parties to the action must have interests that are adverse; (3) the party seeking relief must have a legally protectible interest; and (4) the issues presented must be ripe for judicial determination." *Williamson v. Farrell*, 2019 UT App 123, ¶ 11, 447 P.3d 131.

25.     A justiciable controversy exists where a party can plead concrete facts indicating a specific injury sustained or threatened. *Salt Lake County. v. State, 2020 UT 27, ¶ 42, 466 P.3d 158* (quotation marks omitted).

26.     A justiciable controversy exists here because UDWR is the holder of the fishing easement, the statutorily appointed trustee and custodian of protected wildlife in Utah and is tasked

with the responsibility to improve access for fishing and hunting and to provide perpetual access for hunting, fishing, or trapping in Utah under Utah Code Ann. §§ 23A-3-207 and -306.

27.     UDWR uses the Fishing Easement and other similar instruments throughout the state to manage fisheries and to provide fishing opportunities to Utah citizens so they may exercise their Constitutional right to fish in the state under UTAH CONST. ART. I, § 30.

28.     Defendants' refusals to recognize the validity of DWR's Fishing Easement injures DWR's abilities to manage protected wildlife and guarantee access to anglers seeking to exercise their constitutionally protected right to fish constitute a justiciable controversy that this Court must resolve through a declaratory order.

29.     The parties' interests are adverse because Defendants have refused to recognize the validity of the Fishing Easement by posting no trespassing signs stating, "Private Property: No Fishing Easement Exists Here," and telling UDWR staff and anglers they cannot access the river at the Fishing Easement location, thereby refusing to recognize UDWR's valid real property interest and impacting UDWR's ability to manage the fishery and provide public angler access.

30.     Third, a legally protectible interest is an interest "at law or in equity." *Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592, 597 UDWR has a valid legal real property interest in the Fishing Easement a declaratory judgment in its favor will serve to protect.

31.     Fourth, an issue is ripe for judicial determination when "there is an actual controversy, or that there is a substantial likelihood that one will develop so that the adjudication will serve a useful purpose in resolving or avoiding controversy or possible litigation." *Alternative Options & Servs. For Child. v. Chapman*, 2004 UT App 488, ¶ 24, (quoting *Salt Lake Co. Comm'n v. Short*, 1999 UT 73, ¶ 12 ).

32.     An actual controversy exists here because Defendants refuse to recognize the validity of the fishing easement, which has created problems for UDWR staff, law enforcement and the public and will likely continue to create problems for UDWR's management of the fishery and the public's right to access this stretch of the Provo River. This matter is ripe for a declaratory judgment to resolve these issues for the parties.

### SECOND CLAIM FOR RELIEF
**(Easement Deed Reformation)**

33.     UDWR hereby incorporates by reference all above paragraphs of this Complaint as if fully set forth herein.

34.     "Reformation of a deed is appropriate where the terms of the written instrument are mistaken in that they do not show the true intent of the agreement between the parties." *Peterson v. Pierce, 2019 UT App 48, ¶ 25, 440 P.3d 833, 841* citing *RHN Corp. v. Veibell, 2004 UT 60, ¶ 36, 96 P.3d 935*. Mutual mistake of the parties provides a ground to seek the equitable remedy of reformation. *Id.*

35.     PacifiCorp and UDWR intended to create the Fishing Easement for the purposes contained therein and neither party intended the location of the Fishing Easement to lie 100' away from the river.

36.     The inconsistencies contained in the Fishing Easement's legal description of the shared border to UDOT's railroad right-of-way do not reflect this intent and instead are the result of a scrivener's error that is contrary to the original intent and purposes of the Fishing Easement.

37.     The Court should reform the Fishing Easement's legal description in order to correct the scrivener's error and to reflect the original intent of the parties.

**UDOT'S ALLEGATIONS AND CLAIMS FOR RELIEF**

**THIRD CLAIM FOR RELIEF**
**(Quiet Title)**

38.     UDOT hereby incorporates by reference paragraphs 1, 3-4, 5-7 and 9 of this Complaint as if fully set forth herein.

39.     This action is brought in accordance with Utah Code §§78B-6-1301, *et seq*.

40.     The United States granted the railroad right-of-way (easement) in Provo Canyon to Denver and Rio Grande Western Railroad Company through the 1875 General Railway Right of Way Act.  On July 12, 1897, the Secretary of the U.S. Department of Interior approved the survey of the Rio Grande Western Railway.

41.     The railroad right-of-way is 100 feet on each side of the centerline, for a total of 200 feet.  The railroad right-of-way is an exclusive easement for railroad purposes.

*Requisite Steps to Transfer the Railroad Right-of-Way to the State Road Commission.*

42.     Before ceasing operation of a railroad line, the 49 U.S.C. §1(18) (1964) required Denver and Rio Grande Western Railroad Company to file an application and obtain a certificate from the Interstate Commerce Commission to abandon any portion of a railroad line or operation.

43.     On April 4, 1969, Denver and Rio Grande Western Railroad Company filed with the Interstate Commerce Commission an application for a certificate of public convenience and necessity to authorize the abandonment of the portion of its Provo Canyon Branch from MP 5.90 near Olmstead, Utah County, Utah to the end of the branch line, MP 28.05 at Heber, Utah, in Wasatch County.

44.     The application's, Finance Docket No. 25625, purpose included retiring and abandoning 22.05 miles of track of the Provo Canyon Branch.  The State Road Commission made

an offer of $264,000.00 for the railroad right-of-way and track structure proposed to be abandoned. The land value was $64,000.00 and $200,000.00 net salvage value for the railroad tracks. The State Road Commission's engineer estimated that the use of the railroad right-of-way would result in a construction savings of $495,657.00 for the proposed highway construction Project F-019-1(13). This analysis of the cost made apparent that there is a substantial savings to the public if the railroad trackage in Provo Canyon can be abandoned.

45.     On July 17, 1969, the Interstate Commerce Commission granted the certificate, which allowed Denver and Rio Grande Western Railroad Company to sell the railroad right-of-way, including the tracks and improvements, to the State Road Commission. (*See* Attachment B).

### *The State Road Commission purchased the railroad right-of-way from the Denver and Rio Grande Western Railroad Company*.

46.     On January 8, 1971, the Denver and Rio Grande Western Railroad Company transferred its railroad right-of-way to the State Road Commission, the predecessor in interest to UDOT, by quit claim deed. The railroad right-of-way is located in Section 13, T. 5 S. R. 3E., S.L.B. & M. (*See* Attachment C).

47.     Pursuant to 43 U.S.C. §912, the railroad right-of-way may be used for a public highway.

48.     The State Road Commission purchased the railroad right-of-way for highway construction project F-019-1(13). A portion of the railroad right-of-way became US-189 right-of-way during the highway construction project F-019-1(13) and subsequent highway construction projects.

49.     No court has ordered the abandonment of the railroad right-of-way granted under the 1875 General Railway Right of Way Act pursuant to 43 U.S.C. §912.

### *Continuing Use of the Railroad Right-of- Way*

50.     After the State Road Commission purchased the railroad right-of-way, the first operation of railroad uses occurred in July 1971. The State Road Commission did not remove the tracks.

51.     Since 1971, UDOT or the State Road Commission leased the railroad right-of-way for railroad purposes. The operation of the Heber Creeper provided transportation, scenic, and tourist opportunities.

52.     UDOT currently leases the railroad right-of-way to Heber Valley Historic Railroad Authority ("Heber Valley"), an independent state agency.

53.     UDOT funded a project, Provo Canyon Parkway, with state funds to mitigate safety impacts from NH-0189(12)14. UDOT and Heber Valley are cooperating with each other concerning the construction of the multi-use path, the railbed, and replacement of the tracks within the railroad right-of-way. After the completion of the Provo Canyon Parkway, Heber Valley will be reinstalling the train tracks on the railroad right-of-way. Heber Valley plans to incorporate the multi-use path as part of its bike and walk on board train program.

54.     During the clearing of the railroad right-of-way for the Provo Canyon Parkway project, alleged beneficiaries of the Defendant SHCH Alaska Trust demanded that the preliminary construction activity cease because the beneficiaries own the property where the railroad right-of-way is located. The Defendant SHCH Alaska Trust also claims that UDOT does not own a property interest in the railroad right-of-way.

55.     The Defendant SHCH Alaska Trust alleges that it obtained its fee property interest in the area underlying the railroad right-of-way by a quit claim deed dated October 31, 2022, from Reserved Properties, Ltd.

56.     The Defendant SHCH Alaska Trust filed a complaint, Civil No. 230500021, on April 3, 2023, in Fourth Judicial District Court, Wasatch County, for inverse condemnation.

57.     UDOT is entitled to have its interests in the foregoing described properties quieted against any claim of the Defendant SHCH Alaska Trust in the described properties subject to any ownership interests in the bed of the river created by the equal footing doctrine.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**(Prescriptive Easement)**

58.     UDOT hereby incorporates by reference paragraphs 38 to 57 of this Complaint as if fully set forth herein.

59.     In the alternative, UDOT asserts that it has established a prescriptive right-of-way for railroad use.

60.     For over 20 years, UDOT has leased the railroad right-of-way area to the Heber Valley Railroad or previous entities, for railroad uses.

61.     The use of the railroad right-of-way was open, notorious, and clearly visible. Such use was adverse to the owner's interest and without permission or approval of the owner's predecessor in interest.

62.     The Heber Valley Railroad, or the previous entities, operated a train on the tracks where the railroad right-of-way is located.

63.     In addition, the railroad right-of-way deed dated January 8, 1971, was filed with the Wasatch Recorder's office on January 21, 1971.

64.     The width of the railroad right-of-way should be from the edge of the highway right-of-way line to the ordinary high-water mark of the Provo River's banks.

**FIFTH CLAIM FOR RELIEF**
**(Highway Dedication)**

65.     UDOT hereby incorporates by reference paragraphs 38 to 64 of this Complaint as if fully set forth herein.

66.     In the alternative, UDOT asserts that portions of the railroad right-of-way have been dedicated and abandoned as part of US-189.

67.     Portions of the railroad right-of-way were used during the highway construction project F-019-1(13) and current US-189 right-of-way.

68.     Consequently, part of the railroad right-of-way became part of the old US-189 alignment, including portions of the current US-189 alignment.  More than ten years have passed since portions of the railroad right-of-way became part of the old and current US-189 alignment.

69.     A highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of 10 years. Utah Code § 72-5-104 (previously codified at Utah Code § 27-12-89).

70.     Portions of the railroad right-of-way at issue in this action were continuously used as a public thoroughfare for a period of 10 years.

71.     The Transportation Commission has not abandoned the current or old US-189 alignment through Provo Canyon.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS prays for judgment as follows against the Defendants:

**Against Defendant Andrea Oveson, Trustee of SHCH Alaska Trust dated January 2, 2014**

1.      A determination that Denver Rio Grande Western Railroad Company abandoned the railroad right-of-way for the purposes of 43 U.S.C. §912 and a determination that the transfer of the railroad right-of-way from Denver and Rio Grande Western Railroad Company to the State Road Commission complied with 43 U.S.C. §912;

2.      For an order quieting title in favor of UDOT to the railroad right-of-way subject to any ownership interests in the bed of the river created by the equal footing doctrine, and the railroad right-of-way is an exclusive easement for railroad purposes;

3.      In the alternative, for an order determining that UDOT has a prescriptive right-of-way for the railroad uses established for 20 years with a width from the U.S. 189 highway right-of-way to the ordinary high-water mark of the Provo River;

4.      In the alternative, for an order determining that portions of the railroad right-of-way have been dedicated and abandoned as part of US-189 pursuant to Utah Code § 72-5-104 (previously codified at Utah Code § 27-12-89) through continuous use as a public thoroughfare for a period of 10 years;

5.      For an order allowing UDOT or its lessee to remove any objects that interfere with UDOT's or its lessee's use of the highway or railroad right-of-way;

**Against Defendants Andrea Oveson, Trustee of SHCH Alaska Trust dated January 2, 2014, and Jana Gunderson, Trustee of Rocky Mountain Holding Trust dated January 5, 1993**

6.      For a declarative order from the court stating UDWR's Fishing Easement is valid for the stated intended purposes;

7.      Reformation of the Fishing Easement legal description to correct the Fishing Easement's location; and

8.      For other relief as deemed necessary and just by the Court, including costs and attorney's fees.

DATED this 16th day of November, 2023.

UTAH ATTORNEY GENERAL'S OFFICE


*/s/ Charles A. Lyons*
Charles A. Lyons
Kyle O. Maynard
*Attorneys for Utah Division of Wildlife Resources*


DATED  16th day of November, 2023.

UTAH ATTORNEY GENERAL'S OFFICE

*/s/ Renee Spooner*
RENEE SPOONER
PAUL MCCONKIE
Assistant Attorneys General
*Attorneys for Plaintiff UDOT*

**Plaintiffs' Addresses:**

**Utah Department of Natural Resources – Division of Wildlife Resources**
**1594 W. North Temple St.**
**Salt Lake City, Utah 84116**


**Utah Department of Transportation**
**4501 South 2700 West**
**West Valley City, Utah  84119**

# ATTACHMENT A

## EASEMENT

THIS EASEMENT is made and granted to the STATE OF UTAH DEPARTMENT OF NATURAL RESOURCES, DIVISION OF WILDLIFE RESOURCES ("DWR"), a body politic, hereinafter called "grantee", by PACIFICORP an Oregon cor~~~~~ ~~~ the UTAH POWER & LIGHT COMPANY, hereinafter called "Grantor".

WITNESSETH, that for and in consideration of Ten and No/100 Dollars ($10.00), paid by Grantee to Grantor, receipt of which is acknowledged, and other good and valuable consideration, Grantor hereby grants, bargains, sells and conveys to Grantee, its successors and assigns, in perpetuity, an easement for the purposes described herein upon lands located in Utah and Wasatch Counties, Utah, described as follows:

Beginning at a point on the East line of the Heber Creeper Railroad, said point being located East 2926.96 feet and North 36.02 feet, more or less from the southwest corner of Section 13, T. 5 S., R. 3 E., SLB&M; thence S.16°31'12"W. 724.73 feet; thence Southerly along the arc of a 642.00 foot radius curve to the left 291.86 feet through a central angle of 26°02'50"; thence N.80°28'22"E. 100.00 feet to a point on a 542.00 foot radius curve, the center of which bears N.80°28'22"E.; thence Northeasterly along the arc of said curve 246.40 feet through a central angle of 26°02'50"; thence N.16°31'12"E. 60.00 feet; thence N.34°33'15"E. 226.11 feet; thence N.03°53'41"W. 200.68 feet; thence N.16°31'12"E. 261.65 feet; thence Northeasterly along the arc of a 585.00 foot radius curve to the right 460.85 feet, through a central angle of 45°08'10"; thence N.61°39'22"E. 326.44 feet; thence Northerly along the arc of a 825.00 foot radius curve to the left 471.73 feet, through a central angle of 32°45'40"; thence N.28°53'42"E. 319.96 feet; thence Northerly along the arc of a 686.00 foot radius curve to the left 757.39 feet through a central angle of 63°15'30"; thence N.34°32'48"W. 267.56 feet; thence Northeasterly along a 264.00 foot radius curve to the right 576.04 feet through a central angle of 125°01'00"; thence S.89°20'48"E. 138.83 feet; thence Easterly along a 958.00 foot radius curve to the left 642.62 feet through a central angle of 38°26'00"; thence N.52°13'12"E. 343.93 feet more or less to the east line of Section 13; thence N.00°43'00"W. along said east line 132.60 feet to a point on a 720.00 foot radius curve, the center of which bears N.45°03'54"W.; thence Southwesterly along the arc of said curve 91.55 feet through a central angle of 07°17'06"; thence S.52°13'12"W. 332.55 feet; thence Southwesterly along the arc of a 858.00 foot radius curve to the right 575.54 feet through a central angle of 38°26'00"; thence N.89°20'48"W. 138.83 feet; thence Southwesterly along the arc of a 364.00 foot radius curve to the left 794.23 feet through a central angle of 125°01'00"; thence S.34°21'48"E. 267.56 feet; thence Southerly along the arc of a 586.00 foot radius curve to the right 646.98 feet through a central angle of 63°15'30"; thence S.28°53'42"W. 319.96 feet; thence Southwesterly along the arc of a 725.00 foot radius curve to the left 414.55 feet through a central angle of 32°45'40"; thence S.61°39'22"W. 326.44 feet; thence Southwesterly along the arc of a 685.00 foot curve to the left 539.63 feet through a central angle of 45°08'10" to the point of beginning. Containing 12.65 acres, more or less.

Said easement is for the following purposes and is subject to the following restrictions and conditions:

1. Said easement is granted for public access for the sole purpose of fishing, and it is understood that grantee may grant the access for that purpose only. Except as otherwise provided herein, Grantee shall prohibit any public use not qualifying as a "recreational purpose" under the limitations of landowner act liability provided at Utah Code Ann. Section 57-14-1 et seq.

2. DWR personnel may use the above described easement for purposes of fishery management, fishery creel census, and enforcement of wildlife laws and regulations;

3. DWR personnel may use the above described easement for purposes of ingress and egress for the purpose of repairing and stabilizing stream banks and stream beds, planting vegetation for erosion control and fish habitat, including the right to use necessary equipment which does not unreasonably interfere with the natural or existing character of the easement or surrounding lands. Said right of ingress and egress passes to persons and or contractors employed by DWR.

4. DWR is given the right to use the above described easement for purposes of constructing a fence along the boundary of said easement for the purpose of excluding livestock.

Grantee agrees to defend and indemnify and hold harmless the Grantor from and against any liability, damage, loss, cost and/or expenses, including attorneys' fees on account of injury or damage to persons or property occurring on the easement granted herein or occasioned by the public's use of the easement granted herein or occasioned by facilities or equipment owned or controlled by Grantee, its agents or assigns.

IN WITNESS WHEREOF, the undersigned Grantor has set their hands this __ day of July, 1993.

PACIFICORP, an Oregon corporation

By _____

Its **SR. VICE PRESIDENT**

STATE OF UTAH
Division of Wildlife Resources

_____
TIMOTHY H. PROVAN
Director

NOTARY PUBLIC
RALPH A. MILES
1596 West North Temple
Salt Lake City, Utah 84116
My Commission Expires
September 24, 1995
STATE OF UTAH

STATE OF UTAH    )
                  : ss.
COUNTY OF SALT LAKE    )

The forgoing instrument was acknowledged before me this 27TH day of JULY, 1993, by HARRY A. HAYCOCK, a Vice President of PACIFICORP, an Oregon corporation, who is duly authorized by the Board of Directors of said corporation and who executed the foregoing instrument on behalf of said corporation.

Brenda J. DeVore
Notary Public

NOTARY PUBLIC
BRENDA J. DeVORE
1407 West North Temple
Salt Lake City, Utah 84140
My Commission Expires
February 3, 1995
STATE OF UTAH

Residing at: Salt Lake City, Utah

My Commission expires: 2/3/95

85

STATE OF UTAH                          )
                                       : ss.
COUNTY OF SALT LAKE                    )

On this 20th day of __July__, 1993, personally appeared before me Timothy H. Provan, who duly acknowledged to me that he is the Director of the State of Utah Division of Wildlife Resources, that he is authorized to execute the foregoing instrument; and that he did execute said instrument for and in behalf of said Division by virtue of the authority granted to him.

_Ralph A. Miles_
Notary Public

Residing at: _Summit Co._

My Commission expires: _____

NOTARY PUBLIC
RALPH A. MILES
1598 West North Temple
Salt Lake City, Utah 84116
My Commission Expires
September 24, 1995
STATE OF UTAH

86



PROVO RIVER
BELOW DEER CREEK

| LINE | DIRECTION | DISTANCE |
|---|---|---|
| L1 | N 80°28'21" E | 100.00' |
| L2 | N 34°15'45" E | 226.11' |
| L3 | N 02°55'41" E | 200.68' |
| L4 | N 16°31'02" E | 261.25' |
| L5 | N 28°53'42" W | 319.96' |
| L6 | N 34°21'48" E | 267.56' |
| L7 | S 89°20'48" E | 139.89' |
| L8 | N 00°43'00" W | 132.60' |
| L9 | S 89°20'48" E | 139.89' |
| L10 | S 34°21'48" E | 267.56' |
| L11 | N 28°53'42" E | 319.96' |

| CURVE | RADIUS | LENGTH | DELTA |
|---|---|---|---|
| C1 | 720.00' | 91.55' | 07°17'07" |

POB – East 2,926.96' and North 3,602' from SW corner Section 13 T.5S., R.3E., SLB&M

HEBER CREEPER
RAILROAD RIGHT OF WAY
OR OWNERSHIP
200 FT. WIDE

Railroad trestle near Wildwood

87

# ATTACHMENT B

CERTIFICATE AND ORDER

At a Session of the INTERSTATE COMMERCE COMMISSION, Review
Board Number 5, held at its office in Washington,
D. C., on the 17th day of July, 1969.

Finance Docket No. 25625

DENVER & RIO GRANDE WESTERN RAILROAD CO. ABANDONMENT BETWEEN
OLMSTEAD AND HEBER, UTAH

Upon consideration of the application filed under section
1(18) of the Interstate Commerce Act on April 4, 1969, by The
Denver and Rio Grande Western Railroad Company, a common carrier
railroad subject to Part I of the Act, for permission to abandon
a portion of its Provo Canyon Branch extending from Mile Post
5.90 near Olmstead, to Mile Post 28.05, the end of the branch
line, at Heber, a distance of 22.05 miles of main track and
1.739 miles of sidings and other tracks, for an aggregate of
23.789 miles in Utah and Wasatch Counties, Utah; and of protests
to said application filed by the Railway Labor Executives'
Association and the Brotherhood of Locomotive Engineers, on the
ground that the proposed abandonment, if permitted, would have
an adverse effect upon the employees of the applicant; and of
protests filed by Walter G. Smith of the Utah State Industrial
Promotion Board, by the Honorable Daniel S. Dennis of the Utah
House of Representatives, and by the Honorable Robert F. Clyde
of the Utah State Senate;

It appearing, That the interest of employees will be pro-
tected by the imposition of appropriate conditions; that there
has been a continuing decline in traffic over the line over the
past several years; that there has been no passenger service
since 1945 and that there is no local freight traffic on the
line; that average net losses of $20,241 per year have been
incurred by the system in operating the line since 1966; that
it would cost $40,625 to repair the line over a five-year period;
that industries located on the segment sought to be abandoned are
adequately served by motor common carrier; that the Utah State
Department of Highways will save $495,657 in construction costs
by use of the abandoned right-of-way; and that maintenance and
operation would impose an undue and unnecessary burden on appli-
cant and upon interstate commerce;

It is hereby certified, That, subject to the same conditions
for the protection of employees as set forth in Chicago, B. & Q.
R. Co. Abandonment, 257 I.C.C. 700, the present and future public
convenience and necessity permit the abandonment by The Denver
and Rio Grande Western Railroad Company of the line described
hereinbefore;

It is ordered, That this certificate and order shall take effect and be in force from and after 35 days from its date of service, and that tariffs applicable to the line herein permitted to be abandoned may be canceled upon notice to this Commission and to the general public by not less than 10 days' filing and posting in the manner prescribed in section 6 of the Interstate Commerce Act;

It is further ordered, That, when filing schedules canceling tariffs applicable to said line, the applicant shall in such schedules refer to this certificate and order by date and docket number;

It is further ordered, That, if the authority herein granted is exercised, applicant shall submit for the consideration of this Commission two copies of the journal entries showing the retirement of the line from service, and shall advise this Commission in writing, immediately after abandonment of the line of railroad, the date on which the abandonment actually took place; and

It is further ordered, That if the authority granted in this certificate and order is not exercised within one year from its effective date, it shall be of no further force or effect.

By the Commission, Review Board Number 5.

ANDREW ANTHONY, JR.
Acting Secretary.

(SEAL)

-2-

**FILE IN DOCKET** 5337

## THE DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY

### LAW DEPARTMENT

### DENVER, COLORADO 80217

ERNEST PORTER
VICE PRESIDENT AND GENERAL COUNSEL

KENNETH D. BARROWS
GENERAL SOLICITOR

ROYCE D. SICKLER
COMMERCE COUNSEL

JOHN S. WALKER
GENERAL ATTORNEY

DONALD D. PFEIFER
ATTORNEY

September 16, 1969

Mr. Andrew Anthony, Jr.
Acting Secretary
Interstate Commerce Commission
Washington, D. C 20423

RECEIVED SEP 19 4 05 PM

Re:   Finance Docket No. 25625
Denver & Rio Grande Western
Railroad Company, Abandonment
between Olmstead & Heber, Utah

Dear Mr. Anthony:

This letter is to advise that The Denver and Rio
Grande Western Railroad Company exercised the authority
granted in the Order herein served July 29, 1969, on the
3rd day of September, 1969.

Tariffs have been cancelled in accordance with
the requirements of the Certificate and Order, and applicant
has submitted for the consideration of the Commission two
copies of the journal entries showing the retirement of the
line from service.

Very truly yours,

General Attorney

JSW jg

x

INTERSTATE
COMMERCE COMMISSION
RECEIVED

SEP 19 1969

RECORDS & SERVICE
P   MAIL BRANCH

# ATTACHMENT C

# Quit Claim Deed

## CORPORATION

The Denver and Rio Grande Western Railroad Company, a corporation of the State of Delaware, Grantor, hereby QUIT CLAIMS to the STATE ROAD COMMISSION OF UTAH, Grantee, that portion of the Denver and Rio Grande Western Railroad Company Right of Way in Section 13, T. 5 S., R. 3 E., S.L.B.&M., said Railroad Right of Way is located in Wasatch County, State of Utah and is described as follows:

Beginning at a point which is East 2707.67 feet, more or less, from the Southwest Corner of Sec. 13, T. 5 S., R. 3 E., S.L.B.&M.; thence N.16°31'12"E. 96.89 feet, more or less; thence Northeasterly along the arc of an 885.0 foot radius curve to the right 697.18 feet through a central angle of 45°08'10"; thence N.61°39'22"E. 326.44 feet; thence Northeasterly along the arc of a 525.0 foot radius curve to the left 300.19 feet through a central angle of 32°45'40"; thence N.28°53'42"E. 319.96 feet; thence Northerly along the arc of a 386.0 foot radius curve to the left 426.17 feet through a central angle of 63°15'30"; thence N.34°21'48"W. 267.56 feet; thence Northeasterly along the arc of a 564.0 foot radius curve to the right 1230.62 feet through a central angle of 125°01'; thence S.89°20'48"E. 138.83 feet; thence Northeasterly along the arc of a 658.0 foot radius curve to the left 441.38 feet through a central angle of 38°26'; thence N.52°13'12"E. 332.55 feet; thence Northeasterly along the arc of a 520.0 foot radius curve to the left 318.18 feet through a central angle of 35°03'30"; thence N.17°09'42"E. 14.77 feet to a point on the East line of said Sec. 13, said point being S.0°43'E. 960.59 feet from the Northwest corner of said Sec. 18; thence S.0°43'E. along said East line 373.04 feet to a point on a 720.0 foot radius curve, the center of which bears N.44°38'10"W.; thence Southwesterly along the arc of said curve 91.55 feet through a central angle of 7°17'06"; thence S.52°13'12"W. 332.55 feet; thence Southwesterly along the arc of an 858.0 foot radius curve to the right 575.54 feet through a central angle of 38°26'; thence N.89°20'48"W. 138.83 feet; thence Southwesterly along the arc of a 364.0 foot radius curve to the left 794.23 feet through a central angle of 125°01'; thence S.34°21'48"E. 267.56 feet; thence Southerly along the arc of a 586.0 foot radius curve to the right 646.98 feet through a central angle of 63°15'30"; thence S.28°53'42"W. 319.96 feet; thence Southwesterly along the arc of a 725.0 foot radius curve to the right 414.55 feet through a central angle of 32°45'40"; thence S. 61°39'22"W. 326.44 feet; thence Southwesterly along the arc of a 685.0 foot radius curve to the left 539.63 feet through a central angle of 45°08'10"; thence S.16°31'12"W. 37.57 feet, more or less, to the South line of said Sec. 13; thence West along said South line 208.61 feet to the Point of Beginning, containing 21.46 acres. Together with all water rights pertaining to the above described land.

IN WITNESS WHEREOF, the said The Denver and Rio Grande Western Railroad Company has caused this Instrument to be executed by its proper officers thereunto duly authorized, this day of 8th January , A.D. 1971 .

THE DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY

W. J. Holtman

Executive Vice President & General Manager

STATE OF COLO. )
) ss.
COUNTY OF City and County )

On this 8th day of January ,A.D. 1971 , personally appeared before me, W. J. Holtman , who, being by me duly sworn says that he is Exec. VP & Gen. Mgr. of The Denver & Rio Grande Western RR Company , a corporation, and that the within and foregoing instrument was signed in behalf of said corporation by authority of and the said AND acknowledged to me that said corporation executed the same.

WITNESS my hand and official seal the day and year in this certificate first above written.

My Commission expires: June 25, 1973

Dean F. Ferguson
Notary Public

RW Special
Prepared by: RLN 8-4-70

34664
Entry No.

Recorded at request of State Dept. of Highways no fee
Date JAN 2 1 1971 , 9A M. Carma Van Wagoner Wasatch County Recorder:
Deputy. Book 72 Page 49