IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE STATE OF UTAH, through UTAH DEPARTMENT OF NATURAL RESOURCES – DIVISION OF WILDLIFE RESOURCES, an agency of the State of Utah; and UTAH DEPARTMENT OF TRANSPORTATION, an agency of the State of Utah,<br><br>      Plaintiffs,<br><br>v.<br><br>ANDREA OVESON, Trustee of SHCH ALASKA TRUST, dated January 2, 2014; JANA GUNDERSON, Trustee of ROCKY MOUNTAIN HOLDING TRUST, dated January 5, 1993; and JOHN DOES 1-10,<br><br>      Defendants. | **MEMORANDUM DECISION & ORDER ON PLAINTIFFS' MOTION TO SEVER AND REMAND AND DEFENDANTS' MOTIONS TO STAY OR DISMISS**<br><br>Case No. 2:23-cv-00789-JNP-DBP<br><br>District Judge Jill N. Parrish |

      The Utah Department of Natural Resources – Division of Wildlife Resource ("DWR") and the Utah Department of Transportation ("UDOT") filed suit against the trustees of certain trusts (generally, "Trusts"), seeking to resolve a dispute regarding the parties' interests in certain property. Before the court are DWR's motion to sever and remand certain claims, ECF No. 15 ("Mot. to Sever"), and the motion of the Trusts to stay or dismiss other claims. ECF Nos. 17 ("Mot. to Stay").[1] For the reasons set out below, DWR's motion to sever and remand is **GRANTED**, and the Trusts' motion to stay or dismiss is **GRANTED**.

---

[1] The Trusts had previously filed an earlier motion to stay, ECF No. 8, but that motion was mooted by the filing of an amended complaint and a subsequent motion to stay the amended complaint.

**FACTUAL BACKGROUND**

This action stems from a joint complaint filed by DWR and UDOT. Both plaintiffs' claims generally concern interests in real property located in Provo Canyon, Wasatch County, Utah. DWR's two claims center on a fishing easement created in 1993. That easement allows DWR personnel to manage the fishery, take fish census, and enforce wildlife laws and regulations, among other things. DWR claims that the metes and bounds of the fishing easement are inconsistent with the recorded map and the boundaries of a railroad right-of-way discussed below. DWR alleges that the fishing easement's legal description contains typographical errors and an ambiguity, and thus seeks a declaration regarding the boundaries of the easement along with reformation of the easement deed to "correct the scrivener's error and to reflect the original intent of the parties." ECF No. 13 ("Am. Compl.") ¶ 37.

UDOT's three claims involve a railroad right-of-way abutting the fishing easement. That right-of-way was granted by the United States to the Denver and Rio Grande Western Railroad Company ("Railroad Company") pursuant to the 1875 General Railway Right of Way Act. 18 Stat. 482, 43 U. S. C. §§ 934-939 ("1875 Act").

On April 4, 1969, the Railroad Company filed an application for a certification of public convenience and necessity to authorize the abandonment of a portion of the railroad right-of-way with the Interstate Commerce Commission ("ICC").[2] The purpose of that application was the retirement and abandonment of roughly 22 miles of track of the Railroad Company's Provo

---

[2] "The ICC Termination Act of 1995 (ICCTA) abolished the Interstate Commerce Commission (ICC) and established the STB [(Surface Transportation Board)] in its stead." *Norfolk S. Ry. v. Surface Transp. Bd.*, 72 F.4th 297, 300 n.1. (D.C. Cir. 2023). For the purposes of this order, the ICC and STB are referred to interchangeably.

Canyon Branch of rail so that the rail segment could be sold to the State Road Commission for highway construction.

On July 17, 1969, the ICC issued a certificate and order of abandonment. That certificate and order stated that, "subject to the same conditions for the protection of employees as set forth in Chicago, B. & Q. R. Co. Abandonment, 257 I.C.C. 700, the present and future public convenience and necessity permit the abandonment by the Denver and Rio Grande Western Railroad Company of the line described hereinbefore," and that the certificate and order took effect and was in force from and after 35 days from its date of service. Am. Compl. Ex. B. The certificate and order also directed the Railroad Company to submit, "for the consideration of [the ICC,] two copies of the journal entries showing retirement of the line from service," and to notify the ICC, "immediately after abandonment of the line of the railroad, the date on which the abandonment actually took place[.]" Id.

The certificate and order was served on July 29, 1969 and, on September 16, 1969, the Railroad Company transmitted to the ICC a notice advising the ICC that it "exercised the authority granted in the [Certificate and Order]" and "retire[d] [] the line from service[.]" Id. The ICC received the notice on September 19, 1969.

Subsequently, the Railroad Company, in January of 1971, purported to transfer its interest in the right-of-way to the Utah State Road Commission by quitclaim deed. Use of the railroad has continued, in some capacity, after the transfer. Since 1971, the State Road Commission has leased the right-of-way for railroad purposes, including the operation of the Heber Creeper, which provides "transportation, scenic, and tourist opportunities." Am. Compl. ¶ 51.

UDOT later funded a project (the Provo Canyon Parkway) to mitigate safety impacts from highway construction projects. UDOT and the Heber Valley Historic Railroad Authority are

3

currently cooperating to construct a multi-use path and replace the tracks within the right-of-way. As the state agencies were clearing the railroad right-of-way for the Provo Canyon Parkway project, beneficiaries of the Trusts sought to stop construction activities, claiming that the beneficiaries own the property where the railroad right-of-way is located. One Trust initiated a state-court inverse condemnation proceeding, and UDOT, in turn, filed a quiet title action in state court. UDOT also brought claims for prescriptive easement and highway dedication.

The Trusts subsequently removed the state-court action to this court on the basis that "the Complaint centers on disputes 'arising under the Constitution, laws, or treaties of the United States.'" ECF No. 2 (quoting 28 U.S.C. § 1331).

## ANALYSIS

At the outset, the court emphasizes that "[t]he jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties." *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951). The Trusts removed this action on the basis of federal question jurisdiction under 28 U.S.C. § 1331. The parties dispute, however, the nature of the federal question prompted by plaintiffs' claims. Each of the parties' motions turns, at least in part, on the nature of the federal question presented.

The Trusts claim that "federal questions arise in every claim." ECF No. 2 at 3. Specifically, they assert that "UDOT's claim for quiet title will require interpretation of federal law to determine whether the Alleged Railroad Right-of-Way was abandoned," and that "UDOT's claim for prescriptive easement can only proceed if UDOT first establishes that the Alleged Railroad Right-of-Way was abandoned under federal statutes." *Id*. It is clear that a federal question arises on the face of UDOT's claims related to the right-of-way created by the 1875 Act.

Regarding DWR's claims, the Trusts argue that resolving the fishing easement claims

>will require the interpretation of federal statutes to establish, among other things, (i) the dimensions of the Fishing Easement to the extent the Court relies on intent to establish those dimensions rather than written documents, (ii) the ownership of the underlying lands to determine if the right to a Fishing Easement was originally granted by a party possessing the necessary ownership interests, and (iii) whether the Fishing Easement can be shifted to interfere in any way with a current railroad right-of-way (in the event Alleged Railroad Right-of-Way was not abandoned).

ECF No. 2 at 4.

Plaintiffs, on the other hand, dispute that DWR's fishing easement claims raise a federal question. DWR argues in its motion to sever that it does not seek to reestablish the easement boundaries in a way that would overlap or interfere with the right-of-way. UDOT similarly asserts that DWR's fishing-easement claims are completely independent from its right-of-way claims, and that this court would not have supplemental jurisdiction over them.

### I.     Motion to Sever

DWR seeks to sever and remand its two claims (related to the fishing easement) from UDOT's claims. Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, . . . sever any claim against a party." DWR argues that its claims do not involve any federal question, that its claims are not part of the same case or controversy as UDOT's, and judicial economy would best be served by severance and remand. It cites tests and factors employed by other district courts to guide their severance discretion under Rule 21. *E.g.*, Mot. to Sever at 5 (citing *Henderson v. Mahally*, 639 F. Supp. 3d 481, 486-87 (M.D. Pa. 2022)).

UDOT also filed a memorandum in support of DWR's motion to sever and remand, arguing that the parties' claims are independent of each other. The Trusts did not file a memorandum in opposition to DWR's motion to sever and remand and, in their reply memorandum in support of their motion to stay the action, the Trusts do not dispute that DWR's claims are independent and

5

severable. The trusts represent that "[t]he Trusts are working with []DWR to resolve those claims outside of [c]ourt," ECF No. 23 at 2, and counsel for the Trusts stated that they stipulate to severance and remand at oral argument.

Having reviewed the parties' arguments, the court concludes that no federal question is presented by DWR's claims regarding the fishing easement as no "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).[3] The court also agrees with DWR and UDOT that DWR's claims are factually and legally independent of UDOT's claims and that it would thus be inappropriate for this court to venture into matters of state law in claims unrelated to a federal question. Because DWR's claims do not share a common nucleus of operative fact, this court concludes that it may not exercise supplemental jurisdiction over those claims. *See Pettigrew v. Okla. ex rel. Okla. Dep't*

---

[3] Of course, "even where a claim finds its origins in state rather than federal law . . . [courts] have identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). This inquiry demands that courts ask the following question: "Does the 'state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?'" *Id*. (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

However, no such federal question is necessarily raised by the fishing easement claims. *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) ("To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." (quoting *Grable*, 545 U.S. at 315). At the very least, there is no *substantial* question of federal law at play in these claims. *See Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) (discussing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).

At bottom, resolving the fishing easement claims—a quintessential matter of state law and state-court expertise—is inconsistent with "congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14.

*of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013). Thus, the court elects to **SEVER** DWR's claims from this action pursuant to Rule 21. The severed DWR action is **REMANDED** to the Fourth District Court, Weber County, State of Utah for lack of subject-matter jurisdiction.

## II. Motion to Stay

The Trusts filed two motions to stay. The first motion, filed in November of 2023, was mooted by the filing of plaintiffs' Amended Complaint. Accordingly, the Trusts filed an almost-identical motion to stay or dismiss the Amended Complaint. The operative motion to stay argues that this court should stay or dismiss this action while it refers to the Surface Transportation Board ("STB"), the successor to the ICC,[4] the matter of the abandonment of the railroad right-of-way.

Pursuant to statute, the STB has exclusive jurisdiction over the abandonment of "spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State." 49 U.S.C. § 10501(b)(2).[5] "[U]nless the Commission [(i.e., the ICC or STB)] attaches postabandonment conditions to a certificate of abandonment, the Commission's authorization of an abandonment brings its regulatory mission to an end." *Hayfield N. R. Co. v. Chi. & N. W. Transp. Co.*, 467 U.S. 622, 633 (1984); *Baros v. Tex. Mex. Ry.*, 400 F.3d 228, 234 & n.14 (5th Cir. 2005) ("[I]n proceedings in which the STB imposes no conditions on an abandonment, the STB's decision to authorize the abandonment will end its

---

[4] *See* note 2 above.

[5] Plaintiffs argue that this court has jurisdiction over the issue of abandonment pursuant to 43 U.S.C. § 912. The Supreme Court has clarified, however, that this is not the case. The right-of-way at issue here, like the one in *Brandt Trust v. United States*, was created by the 1875 Act. In *Brandt*, the court clarified that that 1875 Act does not create "right, title, interest, [or] estate of the United States" in the granted rights-of-way, and that § 912 thus "simply do[es] not apply[.]" 572 U.S. 93, 109 (2014).

7

jurisdiction over the line."). That is, "[o]nce a carrier 'abandons' a rail line pursuant to authority granted by the Interstate Commerce Commission, the line is no longer part of the national transportation system, and although the Commission is empowered to impose conditions on abandonments, as a general proposition ICC jurisdiction terminates." *Preseault v. ICC*, 494 U.S. 1, 5 n.3 (1990).[6]

However, "where an abandonment is conditional, the STB retains jurisdiction over a railroad right-of-way until it has been abandoned pursuant to the conditions imposed by the agency. 'In such cases, the agency also retains exclusive, plenary jurisdiction to determine whether there has been an abandonment sufficient to terminate its jurisdiction.'" *Baros*, 400 F.3d at 234 (quoting *Lucas*, 319 F.3d at 603) (internal citations and emphasis removed); *accord Hayfield*, 467 U.S. at 633 ("*[U]nless the Commission attaches postabandonment conditions to a certificate of abandonment*, the Commission's authorization of an abandonment brings its regulatory mission to an end.") (emphasis added).

Here, the 1969 certificate and order subjects the abandonment decision "to the same conditions for the protection of employees as set forth in Chicago, B. & Q. R. Co. Abandonment,

---

[6] *See also Lucas v. Township of Bethel*, 319 F.3d 595, 602 (3rd Cir. 2003) ("In cases where the ICC has placed no conditions on a railroad abandonment . . . the ICC's decision to authorize an abandonment will bring its jurisdiction to an end."); *Friends of the Atglen-Susquehanna Trail, Inc. v. STB*, 252 F.3d 246, 262 (3rd Cir. 2001) ("Unless the STB attaches post-abandonment conditions to a certificate of abandonment or exemption . . . the authorization of abandonment ends the Board's regulatory mission and its jurisdiction."); *Caldwell v. United States*, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004) ("If the STB approves a standard abandonment application . . . the STB relinquishes jurisdiction over the abandoned railroad right-of-way[.]"); *accord Illig v. Union Elec. Co.*, 652 F.3d 971, 973 n.3 (8th Cir. 2011); *Fox v. Surface Transp. Bd.*, 379 F. App'x 767, 771 (10th Cir. 2010) (unpublished).

257 I.C.C. 700[.]" Am. Compl. Ex. B (underlining in original).[7] Thus, although the Railroad Company sent, in September of 1969, a letter advising the ICC that it "exercised the authority granted in the [Certificate and Order]" and "retire[d] [] the line from service," *id.*, it remains in the exclusive jurisdiction of the STB to determine whether these *Burlington* conditions were satisfied.[8]

## CONCLUSION & ORDER

For the foregoing reasons, DWR's motion to sever and remand its first and second causes of action, ECF No. 15, is **GRANTED**. DWR's claims are **SEVERED** and **REMANDED** to the Fourth District Court of the State of Utah, Weber County. The Trusts' first motion to stay or dismiss, ECF No. 8, is **DENIED AS MOOT**, and its second motion to stay or dismiss, ECF No. 17, is **GRANTED**. The issue of whether the right-of-way was abandoned is hereby **REFERRED** to the Surface Transportation Board. Accordingly, the non-severed action is **STAYED** pending the abandonment determination of that body.

---

[7] These so-called *Burlington* conditions were "routinely imposed . . . where labor protective conditions were warranted." *Illinois v. United States*, 604 F.2d 519, 528 (7th Cir. 1979).

[8] At oral argument, counsel for the Trusts stated that the conditions were likely met and that the line was probably successfully abandoned. Similarly, counsel for UDOT represented that these abandonment conditions were a "non-issue" and that they were in possession of documents purporting to show that they conditions were satisfied. Whether the conditions were satisfied, however, is simply not for this court to decide for the reasons stated above.

If these conditions were not put in place, *Hayfield*, *Preseault*, and the cases cited above stand for the proposition that the ICC's jurisdiction would have terminated. However, because the certificate and order set conditions on the abandonment, it retains jurisdiction to state whether those conditions were met and whether the abandonment was consummated.

DATED July 15, 2024.

BY THE COURT

                                                
Jill N. Parrish
United States District Court Judge